**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID C. WYLIE,** | ) | **Case No. 3:16-cv-102** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANSUNION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This is an action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA" or "Act"), in which Plaintiff David C. Wylie alleges that Defendant Trans Union, LLC ("Trans Union") "continues to falsely and inaccurately report the status of [his] alleged debt owed to credit-furnisher First National Bank of Pennsylvania ('FNB')." (Am. Compl. ¶ 8, ECF No. 11). Pending before the Court is Defendant's Motion to Dismiss (ECF No. 18). For the reasons that follow, Defendant's motion is **DENIED.**

## I.    Background

On November 17, 2014, Plaintiff's daughter, Kathryn R. Wylie, filed for Chapter 13 bankruptcy.[1] (Am. Compl. ¶ 17). Sometime that same month, FNB "furnished information to the Defendant that an account beginning with the Account # 4256045XXXX as [sic] delinquent, bad debt, placed for collection, charged off account and suspended."[2] (*Id.* ¶ 18). "Defendant soon after began improperly reporting the information provided by FNB" on his credit report,

---

[1] Plaintiff has not alleged the current status of the bankruptcy proceedings.

[2] Plaintiff has not alleged whether FNB furnished this information to Defendant before or after Plaintiff's daughter filed for bankruptcy. Thus, it is not clear whether the account was still open when Plaintiff filed for bankruptcy and "charged off" only after the bankruptcy proceedings began.

apparently on the basis that he was a cosigner on the account. (*Id.* ¶ 19). Plaintiff, however, now denies that he cosigned the account. (*Id.* ¶ 26). To support that assertion, he has attached as an exhibit to his amended complaint a proof of claim filed by FNB in the bankruptcy proceedings on December 19 2014, along with the note which lists Plaintiff's daughter as the only borrower. (*Id.* ¶ 20; Ex. B).

On April 2, 2015, Plaintiff's line of credit with U.S. Bank was reduced from $23,000 to $500 "primarily due to 'serious delinquency in time since delinquency was too recent or unknown." (*Id.* ¶ 21). According to Plaintiff, "[t]he FNB report is the only negative account on [his] Credit Report." (*Id.* ¶ 22).

On April 29, 2015, Plaintiff sent a letter to Defendant, contending that his credit report contained "wrong and or incomplete" information. (Pl.'s Ex. D). In the letter, Plaintiff wrote:

> [The FNB account] is my daughter's account and she filed a Chapter 13 bankruptcy in or around November 2014. I spoke to the bank back then and they said I was a co-signor on the account which opened in 2001 or so. I don't recall what happened 14 years ago. The bank has not called me or mailed me anything since they said they were not allowed to due to the Bankruptcy filing. Correct my credit at once.

(*Id.*) That same day, he sent a letter to FNB, disputing the information it had furnished to Defendant. (Pl.'s Ex. E). "I have never used this account," he wrote, "and since my daughter filed Bankruptcy I was told some sort of STAY happened and I received no bills or other methods to pay, if that was even possible." (*Id.*).

FNB responded to Plaintiff on May 4, 2015, explaining, as summarized in the amended complaint, that "[Plaintiff] was a co-signor [sic] on the loan, they were prohibited by the bankruptcy co-debtor stay from communicating with him about the loan and that the

information they were reporting was the correct status of the loan." (Am. Compl. ¶ 25).

On May 14, 2015, Defendant informed Plaintiff that it had completed its investigation and provided him with a copy of his credit report. (*Id.* ¶ 27; Pl.'s Ex. G). In the report, Plaintiff was still listed as a cosigner on the FNB account, which had a pay status of "charged off." (*Id.*)

Plaintiff sent another letter to Defendant on June 9, 2015, in which he wrote:

> For the second and final time. Get this lie off my credit. See the attached letter from FNB proving they would not speak to me, call me, give me bills or accept payments on this account once my daughter file [sic] her Chapter 7. Reporting this information is not fair to me since I had no ability to resolve my issue as a co-signor. It seems to me you should not be reporting any past due or bad rating on me since I did not have the chance to handle this on my own. My credit is perfect and your reporting is killing my score and my ability to get new loans.
>
> * * *
>
> [The FNB account] is my daughter's account and she filed a Chapter 13 bankruptcy in or around November 2014. I spoke to the bank back then and they said I was a co-signor on the account which opened in 2001 or so. I don't recall what happened 14 years ago. The bank has not called me or mailed me anything since they said they were not allowed to due to the Bankruptcy filing. Correct my credit at once.

(Pl.'s Ex. H). Two days later, he sent a second letter to FNB, reiterating his earlier dispute. (*Id.* ¶¶ 28-29). On June 30, 2015, Defendant responded "and failed to correct the inaccuracies." (*Id.* ¶ 30). FNB responded on June 22, 2015, explaining that Plaintiff's request lacked specificity. (*Id.* ¶ 31).

Plaintiff filed suit on May 4, 2016, alleging that Defendant willfully and negligently violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a). (Compl. ¶ 34, ECF No. 1). Defendant moved to dismiss on July 5, 2016, arguing, as an initial matter, that Plaintiff could not establish an FCRA violation because he did not dispute that he cosigned the account and thus could not

show that Defendant reported "inaccurate" information. (ECF No. 8). Plaintiff responded by filing an amended complaint, which is mostly identical to the original except Plaintiff now expressly alleges that he "still denies he was a signor on the account." (Am. Compl. ¶ 26). On August 12, 2016, Defendant filed a motion to dismiss, with a brief in support. (ECF Nos. 18-19). Plaintiff filed a response and a brief in opposition on September 2, 2016. (ECF Nos. 23-24).

## II.      Jurisdiction & Venue

This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1337(a), and 15 U.S.C. § 1681(p).  Because a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III.     Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of the claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint, however, need not include "detailed factual allegations." *Phillips*, 515 F.3d at 231 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must also accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). But "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir .2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The record to consider in making this determination includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis and citation omitted).

IV.     **Discussion**

Plaintiff's claims arise under Sections 1681e(b) and 1681i(a) of the FCRA. Defendant moves to dismiss the complaint in its entirety, arguing that liability under each section is dependent on a threshold showing that it reported inaccurate information, which, in its view, Plaintiff has not adequately alleged.

Section 1681e(b) states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual

about whom the report relates.

To state a claim under this section, a plaintiff must establish four elements: "(1) inaccurate information was included in [his] credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) [he] suffered injury; and (4) [his] injury was caused by the inclusion of the inaccurate entry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996) (citations omitted). To prove a willful violation, a plaintiff must go a step further and prove "that the defendants acted knowingly, intentionally, or recklessly in disregarding the FCRA." *Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714, 725 (E.D. Pa. 2011) (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007)).

Section 1681i(a)(1)(A) provides, in pertinent part:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file.

15 U.S.C. § 1681i(a)(1)(A). To establish liability under this subsection, Plaintiff "must establish that [the defendant] had a duty to [reinvestigate], and that it would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 712 (3d Cir. 2010).

Under both these sections, a plaintiff "'must present evidence tending to show that a credit reporting agency prepared a report containing "inaccurate" information.'" *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (quoting *Cahlin v. Gen. Motors*

*Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)); *see id.* at n.9 (noting that if "the reported information was in fact accurate, a claim brought under § 1681i must fail"). "'A report is inaccurate when it is patently incorrect or . . . misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ] effect,'" even if it is "technically accurate." *Id.* at 902 (quoting *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (some quotation marks omitted; alterations in original). "Whether technically accurate information was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect' is generally a question to be submitted to the jury." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157–61 (9th Cir. 2009)).

Plaintiff alleges that his credit report is inaccurate because (1) he did not actually cosign the FNB account and thus it should never have appeared on his credit report; and (2) even if he is responsible for the account, it was "misleading and improper" for Defendant to report it as "charged off as bad debt, credit line suspended"[3] because, as "a non-filing joint debtor associated with [the] account," he was "protected by [the] Chapter 13 stay."[4] (ECF No. 24 at 7). Instead of reporting the account as having been "charged off," Plaintiff argues, the account should not have been reported at all in accordance with the Consumer Data Industry

---

[3] The FCRA permits credit reporting agencies to report accounts that have been "charged to profit and loss"—i.e., "charged off"—for a period of seven years. 15 U.S.C. § 1681c(a)(4).

[4] Under 11 U.S.C. § 1301, "after the order for relief" is entered in a bankruptcy proceeding, "a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt," unless certain exceptions are met. "The co-debtor stay applies by operation of law, and takes effect once a party, jointly liable on the consumer debt, files for bankruptcy protection under chapter 13." *Patti v. Fred Ehrlich*, PC, 304 B.R. 182, 187 (E.D. Pa. 2003) (citation omitted). At the same time, however, "the discharge of a debtor will not preclude [creditors] from collecting the full amount of a debt from co-debtors or other liable parties." *First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993) (citing 11 U.S.C. § 524(e)).

Association's *Credit Reporting Resource Guide*.[5]

Defendant counters that Plaintiff is attempting to impermissibly "collaterally attack the legal validity of his debt to FNB . . . which question ultimately rests on legal determinations that a [CRA] is incapable of resolving." (ECF No. 19 at 6). In its view, it "is not required to evaluate, nor is it capable of evaluating, the legal merits of Plaintiff's assertions that he lacked legal responsibility for the Account, or that the bankruptcy stay purportedly prevented him from making payments." (*Id.*) (citing, *inter alia*, *DeAndrade v. Trans Union, LLC*, 523 F.3d 61, 67-68 (1st Cir. 2008)).

It is true that "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). But, in the Court's estimation, that is not what Plaintiff is trying to do here. His primary contention is that he never cosigned the account—in other words, that the account simply does not belong to him. That is a factual question, which can be resolved without any inquiry into whether the debt is valid: either he cosigned the loan or he did not. *See Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (concluding that the plaintiff was not mounting a collateral attack on the debt where he

---

[5] "The *Credit Reporting Resource Guide* (CRRG) was created by the Consumer Data Industry Association (CDIA) to assist data furnishers with reporting credit information to the credit reporting companies." https://www.transunion.com/data-reporting/data-reporting-faqs. The section of the *CRRG* upon which Plaintiff relies provides:

> "When a Bankruptcy Chapter 13 is filed by one borrower and there is also a non-filer associated to the account, both are protected by an automatic stay. The non-filer is protected through the completion of the plan. Therefore, the non-filer should be terminated from the account until the plan is completed."

(ECF No. 24 at 7 (quoting *Credit Reporting Resource Guide*, 6-20).

"contend[ed] that the [accounts at issue] [were] not his accounts").

The same is true with Plaintiff's alternative position. As the Court understands Plaintiff's theory, he believes that it was "inaccurate and misleading" to report that the account had been "charged off," when, by operation of the bankruptcy co-debtor stay, no efforts could actually be made to collect the debt during the pendency of the bankruptcy. Contrary to Defendant's argument, resolution of this issue would not require the Court to decide Plaintiff's obligation to make payments to FNB during the course of the bankruptcy proceedings or thereafter. Rather, Plaintiff is alleging a "factual deficiency" that could have been uncovered upon reasonable investigation—i.e., that the account was subject to the bankruptcy proceedings—and that it was inaccurate for the report not to reflect the bankruptcy in some manner. *Cf. Montgomery v. Wells Fargo Bank*, 2012 WL 5497950, at *5 (N.D. Cal. Nov. 13, 2012) ("Disputes regarding the completeness and accuracy of credit reports do not involve inquiries into whether the underlying debt may be collected; rather, they involve inquiries about how the debt has been reported.").

Having found that Plaintiff is not attempting to improperly attack the validity of the debt, the Court must consider whether his allegations satisfy the "inaccuracy" requirement. With respect to Plaintiff's primary allegation—that he never cosigned the account—that requirement has been met. If Plaintiff never cosigned for the account, then the account should not have appeared on his credit report. The report would have, thus, been "inaccurate" on its face.

Plaintiff's alternative theory presents a more difficult question: Was it "inaccurate" for Defendant to report that the FNB account had been "charged off" without also noting that the

account had been included in Plaintiff's daughter's bankruptcy proceedings? The parties have

not directed the Court's attention to any caselaw directly addressing this question.[6]

Nonetheless, the Court does not write on an entirely blank slate.

In *Nissou-Rabban v. Capital One Bank (USA), N.A.*, the plaintiff argued that the defendant

violated the FCRA by reporting to a CRA that the plaintiff's account had been charged off

"while her bankruptcy proceedings were pending." 2016 WL 4508241, at *3 (S.D. Cal. June 6,

2016). The court rejected this theory. *Id.* As it explained:

> Collection activities are automatically stayed when a person files
> for bankruptcy. 11 U.S.C. § 362(a). It does not follow, however,
> that reporting on debts in a way that reflects their status at the
> time bankruptcy proceedings were pending, instead of their status
> after the debt was discharged, is inaccurate. The Court agrees with
> other district courts that have addressed this question that
> otherwise accurate negative credit reporting is not retroactively
> made inaccurate because a bankruptcy petition later discharged
> the debt. *See, e.g., Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB,
> 2012 WL 6599681, at *5–6 (N.D. Cal. Dec. 18, 2012); *Mortimer v. JP
> Morgan Chase Bank, N.A.*, No. C 12-1936 CW, 2012 WL 3155563, at
> *3 (N.D. Cal. Aug. 2, 2012). Thus, pleading facts that show a
> furnisher reported information that was *accurate while bankruptcy
> was pending but before the debt was discharged* does not, as a matter
> of law, provide the predicate inaccuracy necessary to state an
> FCRA or CCRAA claim. *See Giovanni*, 2012 WL 6599681, at *6;
> *Mortimer*, 2012 WL 3155563, at *3.

*Nissou-Rabban*, 2016 WL 4508241, at *3 (emphasis added); *accord Harrold v. Experian Info. Sols.*,

---

[6] Plaintiff cites *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991), and *In re Luedtke*, No. 02-35082-SVK, 2008 WL 2952530, at *2 (Bankr. E.D. Wis. July 31, 2008), but the Court does not find these cases particularly helpful. Both involved situations in which bankruptcy courts found violations of the bankruptcy code (more specifically, the codebtor stay provision in *Sommersdorf* and the order of relief in *Luedtke*) where creditors furnished information to credit reporting agencies during the course of bankruptcy court proceedings. These cases are not necessarily relevant here, however, because "the question before the Court is whether Defendants reported accurate information, not whether Defendant violated the bankruptcy code." *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, at *10 n.3 (N.D. Cal. Apr. 10, 2013).

*Inc.*, No. C 12-02987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) (explaining that "reports of delinquencies in payment while bankruptcy proceeding are still ongoing is not 'incomplete or inaccurate' information").[7]

Nevertheless, the *Nissou-Rabban* court refused to dismiss the claim. Instead, it held that the plaintiff had adequately pled that the defendant's reporting was "misleading," insofar as she alleged that the defendant "failed to follow the Metro 2 format, which is the industry standard," pursuant to which the account should have been reported as "'D' or 'no data' during the pendency of a bankruptcy," instead of as "charged off." *Id.* at *4. The court found that the deviation from industry standards could render the report "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Id.* (quoting *Carvalho*, 629 F.3d at 890).

The same court addressed a similar claim more recently in *Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017), but reached a somewhat different result. In that case, the plaintiff declared Chapter 13 bankruptcy. Thereafter, his credit report continued to note that certain accounts had past due or inaccurate balances, were in collection, or had been charged off. *Id.* at *1. The plaintiff argued that the report was inaccurate because it reflected "an amount other than that set in the Chapter 13 plan." *Id.* at *5.

The court rejected the plaintiff's argument, concluding that "the legal status of a debt

---

[7] As one court recently recognized, courts in the Northern District of California have "repeatedly rejected" the argument that it is inaccurate to report delinquent debts, or debts that had been "charged off," prior to the discharge of the debts in bankruptcy. *Connors v. Experian Info. Sols., Inc.*, 2017 WL 168493, at *3 (N.D. Cal. Jan. 17, 2017) (collecting cases). The few cases the Court has encountered outside the Northern District of California seem to be in accord. *See, e.g., George v. Chex Sys., Inc.*, 2017 WL 119590, at *2 (D. Kan. Jan. 12, 2017). It does not appear that this issue has been given significant consideration outside of that district, however. Thus, though the cases from the Northern District of California are obviously not binding, the Court will look to them as persuasive authority in deciding this motion.

does not change until the debtor is discharged from bankruptcy . . . . Thus, a confirmation order does not constitute a final determination of the amount of the debt, and it is not misleading or inaccurate to report delinquent debt during the pending of a bankruptcy proceeding but before discharge." *Id.* at \*6 (citing *Blakeney*, 2016 WL 4270244, at \*6). In the process, the court also distinguished *Nissou-Raban*, which, it explained, "held only that if a furnisher reports a debt that is the subject of a pending bankruptcy, it could be misleading for the furnisher to describe that debt as 'charged off'—that is, seriously delinquent and likely uncollectible—rather than to specify that the debt is the subject of a pending bankruptcy." *Devincenzi*, 2017 WL 86131, at \*6. "Thus," the court said, "at most, *Nissou-Raban* stands for the proposition that a furnisher that reports delinquent debts during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending so that creditors know that those delinquent debts may be discharged in the future." *Id.* Since, unlike in *Nissou-Raban*, Devincenzi had not alleged that the defendant "failed to mention the pending bankruptcy," the court did not "consider whether such a failure would be misleading or inaccurate." *Id.* at \*7.

However, the court granted Devincenzi leave to amend to clarify whether the defendant had, in fact, failed to indicate that the debts were included in the bankruptcy proceedings. *Id.* (directing the plaintiff to "provide much more specific allegations regarding what precisely [the defendants] reported and how these reports could be misleading"); *accord Abbot v. Experian Info. Sols., Inc.*, 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016) ("reporting delinquent payments during bankruptcy may be misleading depending on the circumstances, including whether the report fails to indicate that a charge is disputed or part of a bankruptcy").

Against this backdrop, the Court concludes that Plaintiff's alternative theory is

potentially viable. Reporting that a debt had been "charged off" is not, in and of itself, inaccurate or misleading. But the failure to mention that the account is subject to the bankruptcy proceedings (or the inclusion of the account in the report despite the pendency of the bankruptcy proceedings) might have rendered the report misleading. *See id.* Thus, it would be premature to preclude Plaintiff from advancing this theory at this early stage of the litigation. Of course, Plaintiff will ultimately have to prove with evidence that the report was, in fact, misleading, either by pointing to industry standards as in *Nissou-Raban* and explaining that a potential creditor looking at his report might be misled by Defendant's alleged failure to heed those standards—which he has attempted to do by citing the *CRRG*—or otherwise.

In summary, Plaintiff has adequately pled that his credit report contained inaccurate information. Because Defendant has not raised any arguments as the adequacy of Plaintiff's pleading with respect to the other elements required to sustain a claim under either § 1681e(b) or § 1681i, the Court will assume that those elements have been satisfied. Accordingly, Defendant's motion to dismiss will be denied.

V.      **Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C. WYLIE, | ) | Case No. 3:16-cv-102 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| TRANSUNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 2nd day of March 2017, upon consideration of Defendant's Motion to Dismiss (ECF No. 18) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 18) is **DENIED**. Thus, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant shall file an answer on or before March 17, 2017.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE