# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C. WYLIE, | ) | Case No. 3:16-cv-102 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| TRANSUNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.  Introduction**

In this action brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), Plaintiff David C. Wylie ("Wylie") alleges that Defendant Trans Union LLC ("Trans Union")[1] continues to falsely and inaccurately report the status of his alleged debt owed to First National Bank of Pennsylvania ("FNB").  (*See* ECF No. 11 ¶ 8.)

Pending before the Court is Wylie's Rule 36(b) Motion to Withdraw or Amend Responses to Defendant's Request for Admissions (ECF No. 29) ("Rule 36(b) Motion") and Wylie's Motion for Leave to File Out of Time Statement of Material Facts in Support of his Response to Trans Union's Motion for Summary Judgment (ECF No. 41) ("Motion to File Late Statement").

For the reasons that follow, both of these Motions are **DENIED**.

---

[1] The Court notes that, while the caption refers to "TransUnion, LLC" as a single word with no space and a comma, Trans Union itself consistently breaks its name into two words in all of its filings and does not include a comma between "Trans Union" and "LLC." Based on Trans Union's Disclosure Statement (ECF No. 7), it appears that Trans Union LLC features a space between "Trans" and "Union," but other parents, subsidiaries and/or affiliates are a single word without a space.  *See, e.g.*, "TransUnion Intermediate Holdings, Inc."  In this Memorandum Opinion, the Court will follow Trans Union's choice of spacing and naming conventions.

## II.     Wylie's Rule 36(b) Motion

### A.  Relevant Background

Trans Union served Wylie with its First Set of Requests for Admissions ("Requests for Admissions") on July 21, 2016.  (*See* ECF No. 36; ECF No. 26-6.)  As conceded by his Rule 36(b) Motion, Wylie never responded to Trans Union's Requests for Admissions.  (ECF No. 29.)  Thus, Trans Union's Requests for Admissions were deemed admitted on August 23, 2016 because Wylie failed to respond within 30 days after being served.  *See* Fed. R. Civ. P. 36(a)(3).

On March 3, 2017, over six months after the window to respond to Trans Union's Requests for Admissions expired, Wylie filed his Rule 36(b) Motion (ECF No. 29) and Brief in Support of Rule 36(b) Motion (ECF No. 30), asking the Court to set aside Wylie's default admissions.  Trans Union filed its Response in Opposition on March 22, 2017.  (ECF No. 36.)

### B.  Wylie's Argument

In his Rule 36(b) Motion and Brief in Support of Rule 36(b) Motion, Wylie argues that the Court should allow him to withdraw or amend his default admissions because such a withdrawal or amendment would promote the presentation of the merits of the action and would not prejudice Trans Union because Trans Union had not filed its Answer at the time Wylie filed his Rule 36(b) Motion.  (ECF No. 29 ¶¶1-3; ECF No. 30 at 3.)

Wylie asserts that "upholding the Defendant's deemed admissions would practically eliminate a presentation of the merits of the case."  (ECF No. 30 at 3.)  Seeking to excuse his non-response to the Requests for Admission, Wylie contends that "[t]he parties have been in a holding pattern since September waiting for a definitive answer on Defendant's Motion to Dismiss."  (*Id.*)  To support this "holding pattern argument," Wylie cites to an e-mail sent by

Trans Union in which Defense counsel wrote that Trans Union is not interested in participating in mediation or serious settlement discussions until the Court issues its decision on Trans Union's Motion to Dismiss. (*Id.* at 3; ECF No. 30-1 at 1.)

### C. Trans Union's Argument

In its Response in Opposition, Trans Union maintains that Wylie ignored the Federal Rules of Civil Procedures, Local Rules, the Court's Practices and Procedures, the Court's orders, and case law. (ECF No. 36 at 1.) Accordingly, Trans Union believes Wylie's Rule 36(b) Motion should be denied. Trans Union offers three primary arguments for the denial of Wylie's Rule 36(b) Motion.

First, Trans Union argues that there was never a "holding pattern" in this case and that Wylie unilaterally refused to participate in discovery for over five months without ever asking Trans Union or the Court for an extension of time to respond or filing a motion for a stay with the Court. (*Id.* at 3.) In response to Wylie's citation to the e-mail discussed *supra*, Trans Union points out that this e-mail—sent two months after Wylie's responses to the Requests for Admissions were due—discussed the cancellation of mediation and has no bearing on Wylie's failure to respond to the Requests for Admissions. (*Id.* at 4.) Trans Union also emphasizes case law, the language of Rule 36, orders of this Court, template forms, Local Rules, and the Practices and Procedures of this Court which all expressly indicate that filing dispositive motions does not automatically stay discovery. (*Id.* at 4-5.) Trans Union contends that, even had Wylie moved for a stay, it would have been inappropriate to grant a stay under these circumstances. (*Id.* at 5-6.)

Second, Trans Union suggests that Wylie has failed to show the "good cause" required

to grant his Motion. (*Id.* at 7-8.) To support this contention, Trans Union makes a number of arguments that would be better left to support a motion for summary judgment. (*Id.*) Trans Union also raises a "slippery slope" argument, i.e., if the Court accepted Plaintiff's argument that the presentation of the merits of an action are always best served by allowing a party to withdraw admissions, then this exception would swallow Rule 36(b). (*Id.* at 8.)

Third, Trans Union argues that it would be prejudiced if the Court granted the Rule 36(b) Motion because discovery had been closed for over a month when the Motion was filed and that, because of Wylie's refusal to participate in discovery, Trans Union was unable to depose Wylie and seek other discovery. (*Id.* at 9-10.) In essence, allowing Wylie to withdraw his default admissions would require Trans Union "to begin its investigation of Plaintiff's claims anew, with the difficulties normally attending the passage of time, and prepare a new defense." (*Id.* at 10.) Trans Union asserts that it reasonably relied on Wylie's admissions in its subsequent decision not to conduct certain discovery and that the Court should not reopen discovery "merely to accommodate Plaintiff's prior refusal to abide by the original Scheduling Order." (*Id.*)

The Court agrees with all three of Trans Union's arguments, but notes that the first and third points are more relevant under the standard established by Rule 36(b).

**D. The Standard for Withdrawal or Amendment of Admissions**

Rule 36 sets forth the procedures for serving and responding to requests for admissions. *See* Fed. R. Civ. P. 36. Failure to timely respond to such requests for admission within 30 days of service results in the automatic admission of the matters requested. *See* Fed. R. Civ. P. 36(a)(3). Once admitted, the matter is "conclusively established unless the court, on motion,

permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Rule 36(b) establishes the standard by which courts should assess motions to withdraw or amend admissions.[2] *See id.* Specifically, Rule 36(b) states, "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* This Court characterizes the language of Rule 36(b) as a conjunctive two-prong test, requiring the Court to consider (1) the presentation of the merits of the action and (2) the prejudice to the requesting party. *See Pritchard v. Dow Agro Sciences*, 255 F.R.D. 164, 172-74 (W.D. Pa. 2009); *see also Conlon v. United States*, 474 F.3d 616, 621-25 (9th Cir. 2007).

Courts have great discretion in deciding whether to permit withdrawal or amendment of admissions. *Id.* (citing *Altman v. Ingersoll-Rand Company*, Civ. Act. No. 05-596, 2008 WL 596066, at *3 (W.D. Pa. 2008)); *Conlon*, 474 F.3d at 625 (holding that Rule 36(b) is permissive and subject to only abuse of discretion review). Additionally, courts should consider the dual emphasis of Rule 36(b) on resolving an action on the merits while upholding a party's justified

---

[2] As observed by Judge Fischer, the Court notes that some cases rely on Rule 6(b)(1)(B) in evaluating whether an admission may be withdrawn. *See Pritchard v. Dow Agro Sciences*, 255 F.R.D. 164, 171 (W.D. Pa. 2009). The Court agrees with Judge Fischer's well-articulated reasoning and conclusion that an untimely response (or nonresponse) to a request for an admission is best evaluated pursuant to the standards set forth in Rule 36(b). *See id.* at 171-72 (quoting 8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2257 (2d ed. 1994)). However, even if Rule 6(b)(1)(B) provided the appropriate standard or an additional requirement, the Court's decision in this matter would be unchanged. If applicable, Rule 6(b)(1)(B) would require Wylie to establish that he missed the August 23, 2016 deadline for responding to Trans Union's Requests for Admissions because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Wylie has not presented any reasons to justify or excuse his neglect in failing to respond to Trans Union's Requests for Admissions. The only excuse offered by Wylie is that the case was in a "holding pattern" during the pendency of Trans Union's Motion to Dismiss. (ECF No. 30 at 3.) However, no order of the Court or agreement by Trans Union provided for a stay or extension of time. Of course, a party cannot unilaterally decide that a case is in a "holding pattern," nor is discovery automatically stayed while a motion to dismiss is pending. Thus, Wylie's explanation of a "holding pattern" certainly does not constitute "excusable neglect" such that an extension of time would be appropriate under Rule 6(b)(1)(B).

reliance on an admission. *Id.* (citing *Altman*, 2008 WL 59606, at *3).

### E. Application of the Rule 36(b) Standard

Looking at the first prong of the Rule 36(b) test, the Court agrees with Wylie that "upholding the Defendant's deemed admissions would practically eliminate a presentation of the merits of the case." (ECF No. 30 at 3.) Given the content of the Requests for Admissions and Wylie's deemed admissions thereto, granting Wyle's Rule 36(b) Motion likely would promote the presentation of the merits of the action by Wylie. However, Rule 36(b) features a two-prong, conjunctive test, and Wylie satisfies only the first of the prongs.[3]

In regard to the second prong, the Court finds that Trans Union has met its burden of showing prejudice. *See Conlon*, 474 F.3d at 622 (stating that the party relying on the deemed admission has the burden of proving prejudice). Trans Union convincingly contends that, if Wylie's Rule 36(b) Motion were granted, the case would need to, in essence, return to the beginning of discovery because Wylie entirely refused to respond to Trans Union's discovery requests or to issue his own discovery requests. (ECF No. 36 at 9-10.)

While Trans Union adhered to the Court's orders and the Federal Rules of Civil Procedure, Wylie simply refused to participate in discovery. The Court will not penalize Trans Union for actively pursuing discovery and reasonably relying on Wylie's default admissions in choosing what discovery to pursue by granting Wylie's Rule 36(b) Motion—a motion made over a month after the close of discovery and over six months after the Requests for Admissions

---

[3] The Court also notes that the first prong would virtually always be satisfied. If admissions were not detrimental to the presentation of the merits of a party's case, that party would rarely put forth the time and effort necessary to file a motion and brief asking a court's permission to withdraw or amend those admissions. The "prejudice" prong of the Rule 36(b) is clearly sufficient, by itself, to deny a motion to withdraw or amend an admission.

were deemed admitted. Even beyond the time, expense, and evidentiary difficulties that Trans Union would unfairly incur through the reopening of discovery were the Court to grant Wylie's Rule 36(b) Motion, Trans Union filed its Motion for Summary Judgment and accompanying brief (ECF Nos. 25, 27) on February 15, 2017—21 days prior to Wylie filing his Rule 36(b) Motion. Therefore, granting this Motion would cause Trans Union to suffer prejudice from the need to substantially amend or supplement its Motion for Summary Judgment and accompanying briefs to eliminate its reliance on Wylie's admissions and to incorporate information gathered during the second round of discovery.

In sum, it is clear to the Court that Wylie unilaterally observed a stay on discovery while awaiting the Court's decision on Trans Union's Motion to Dismiss. Wylie failed to respond to Trans Union's discovery requests, failed to issue his own discovery requests to Trans Union, and failed to ask Trans Union or the Court for an extension of deadlines or stay of discovery. Such complete inaction does not come without consequences under the Federal Rules of Civil Procedure, especially at this late stage in the proceedings when discovery and the filing of motions for summary judgment would need to be repeated. The Court and Rule 36(b) do not excuse Wylie's complete failure to respond to Trans Union's Requests for Admissions when doing so would unfairly prejudice Trans Union. Consequently, the Court denies Wylie's Rule 36(b) Motion.

### III. Wylie's Motion to File Late Statement

#### A. Relevant Background

On February 15, 2017, Trans Union filed its Motion for Summary Judgment (ECF No. 25) and its Statement of Materials Facts (ECF No. 26). Local Rule 56(C) mandates that, within 30

days of service of a motion for summary judgment, the opposing party shall file a responsive statement of material facts and a memorandum of law in opposition to the motion for summary judgment. LCvR 56(C). On March 8, 2017, Wylie filed his Response to Trans Union, LLC's Motion for Summary Judgment (ECF No. 32) and his Reply Brief in Response to Trans Union, LLC's Motion for Summary Judgment (ECF No. 33). However, Wylie did not file his responsive Statement of Material Facts until April 5, 2017 (ECF No. 40). This submission, which was due on March 17, 2017 under Local Rule 56(C), was late by 19 days. On April 12, 2017, i.e., 26 days after the deadline for the filing of his responsive Statement of Material Facts, Wylie filed his Motion to File Late Statement (ECF No. 41). Trans Union filed its Response in Opposition on April 21, 2017 (ECF No. 42).

Pertinent here, Local Rule 56(E) provides that alleged material facts set forth in either party's statement of material facts "will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). Therefore, Trans Union suggests that, for the purposes of summary judgment, all material facts set forth in Trans Union's Statement of Material Facts (ECF No. 37) are deemed admitted due to Wylie's failure to timely deny or otherwise controvert them. (ECF No. 42 ¶5.)

**B. Wylie's Argument**

Hoping to avoid these deemed admissions, Wylie's barely-two-page Motion to File Late Statement asks the Court to grant him leave under Rule 6(b)(1)(B) to file its responsive Statement of Material Facts out of time. (*See* ECF No. 41 at 1.) Wylie did not file an accompanying brief in support of his Motion to File Statement. Wylie's short Motion notes that

Rule 6(b)(1)(B) permits extensions of time after the designated time period has expired if the party failed to act because of excusable neglect. (*Id.* ¶ 3.) To argue that Rule 6(b)(1)(B) applies to his late Statement of Material Facts, Wylie states only that he "believes that the failure to file their Statement of Material Fact due to a clerical error was excusable neglect." (*Id.* ¶ 4.) Wylie provides no further details or explanation.

### C. Applicable Standard

Wylie correctly observes that Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "[T]he determination of whether a party's neglect is excusable has been held to be an equitable determination, in which [courts] are to take into account all the relevant circumstances surrounding a party's failure to file timely." *Nesselrotte v. Allegheny Energy, Inc.*, Civil Action No. 06-01390, 2009 WL 230703, at *9 (W.D. Pa. Jan. 30, 2009) (Fischer, J.) (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 153 (3d Cir. 2005)).

More specifically, the U.S. Supreme Court has directed courts to look at four factors when considering whether a party's neglect is excusable: (1) the danger of prejudice to the opposing party, (2) the length of delay and its potential impact on the proceedings, (3) the reason for the delay, and (4) whether the movant acted in good faith. *See Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'Ship*, 507 U.S. 380, 395 (1993).

The Court will apply each of these four factors in turn.

### D. Application of the Four-Part *Pioneer* Test

#### 1. Danger of Prejudice to Trans Union

Under the first prong, Trans Union argues that it is prejudiced by Wylie's delay because Trans Union filed its Reply in Support of its Motion for Summary Judgment (ECF No. 37) on March 22, 2017. (*See* ECF No. 42. ¶ 13.) This filing occurred 5 days after Wylie's Statement of Material Facts was due on March 17, 2017, 14 days before Wylie filed his Statement of Material fact on April 5, 2017, and 21 days before Wylie filed his Motion to File Late Statement on April 12, 2017. Trans Union asserts that allowing Wylie to submit his Statement of Material Facts would prejudice Trans Union by requiring the expenditure of time and fees to redraft its Reply and further "drag out these already-delayed proceedings and add to Trans Union's costs, where Plaintiff has done nothing to this point in the presentation of the case." (*Id.*)

The Court agrees with Trans Union that granting Wylie's Motion to File Late Statement would likely merit redrafting and refiling of Trans Union's Reply, leading to additional costs and further delay for Trans Union. The Court does not view this prejudice to be particularly severe, but does find the first prong of the *Pioneer* test to weigh slightly in favor of denying the Wylie's Motion to File Late Statement because of this prejudice.

#### 2. The Length of Delay and its Potential Impact on the Proceedings

Under the second prong, Trans Union identifies the length of Wylie's delay as 26 days, measured from the date Wylie's Statement of Material Facts was due until the date Wylie's Motion to File Late Statement was filed. (ECF No. 42 ¶ 14.)

The Court agrees that Wylie filed his Motion to File Late Statement 26 days after his Statement of Material Facts was due. The Court also recognizes that, if the Motion were

granted, the proceedings would be further delayed to allow supplemental or amended briefing to accommodate for the loss of the no-longer-automatically-admitted assertions included within Trans Union's previously uncontested Statement of Material Facts. Thus, the second prong weighs slightly in favor of denying the Wylie's Motion to File Late Statement because of the 26-day delay in the request and the likely delay for the remainder of the proceedings.

### 3. The Reason for the Delay

Under the third prong, Trans Union first cites two federal appellate decisions which emphasize that the "reason for the delay and whether it was within the reasonable control of the movant" have the "greatest import" of the four *Pioneer* factors. *See Graphic Commc'ns. Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000). Trans Union then stresses that Wylie's only explanation of his delay is to describe it as a "clerical error" and that nothing suggests that this clerical error was excusable or reasonable. (ECF No. 42 ¶ 15.) Trans Union also cites cases to support the proposition that ordinary neglect and technical problems do not constitute excusable neglect. *See Fryer v. Enter. Bank*, No. 2:06-cv-0550, 2006 WL 3052165, at *5 (W.D. Pa. Oct. 23, 2006) (Hardiman, J.); *Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 791-92 (E.D. Va. 2013).

The Court concurs that a number of courts have viewed the third prong as the most important of the *Pioneer* factors. *See In re Straub*, Civil Action No. 14-6607, 2015 WL 1279510, at *2 n.5 (E.D. Pa. Mar. 19, 2015); *Stitzel v. Guarini*, No. CIVA 03-4760, 2006 WL 1805972, at *5 (E.D. Pa. June 27, 2006); *see also In re American Classic Voyages Co.*, 405 F.3d 127, 134 (3d Cir. 2005) (relying primarily on the third factor under the facts of the case without indicating that the third

factor must always be the most important factor). Although the Court does not hold that the third-prong must be the most important factor in *all* cases, the Court finds the third factor to have the most weight in the present case because Wylie's proffered reason for his delay of a "clerical error" is wholly inadequate. Wylie offers no explanation as to why the clerical error occurred, no indication of procedures in place to prevent clerical errors of this sort, no description of how this clerical error may have been particularly understandable given exigent circumstances, or any other information to suggest that this clerical error was reasonable or excusable. A nonspecific "clerical error" is not a satisfactory reason for failing to file a clearly-mandated document with the Court.

Moreover, in pre-*Pioneer* cases, the U.S. Court of Appeals for the Third Circuit considered additional factors—which, depending on a given case's articulation of the factors, appear to vary from three to six factors.[4] As a general matter, these pre-*Pioneer* factors have been subsumed into the *Pioneer* test and, thus, are of little concern. *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 327 (3d Cir. 2012). However, some courts have found it helpful to use some of these pre-*Pioneer* factors as sub-factors in analyzing the more general concept of "reason for delay." *See, e.g., Nesselrotte*, 2009 WL 230703, at *9; *Routes 202 & 309 & Novelties Gifts, Inc. v. Kings Men*, Civil Action No. 11-5822, 2014 WL 899136, at *5 (E.D. Pa. 2014). In

---

[4] These pre-*Pioneer* factors include: (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance. *See Consolidated Freightways Corp of Delaware v. Larson*, 827 F.2d 916, 919 (3d Cir. 1987) (internal citations omitted). A sixth applicable factor identified by some cases is "whether the enlargement of time will prejudice the opposing party." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 326 (3d Cir. 2012) (quoting *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988)).

particular, the Third Circuit has noted that when the moving party has claimed excusable neglect based on inadvertence, district courts may also look to whether: (1) the inadvertence reflected professional incompetence; (2) it is an excuse incapable of verification by the court; and (3) the reason demonstrates a complete lack of diligence. *See Nesselrotte*, 2009 WL 230703, at \*9 (citing *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 233 F.3d 188, 196 n.8 (3d Cir. 2000)).

Because Wylie's only stated reason for his delay in filing his Statement of Material facts was "due to a clerical error" (ECF No. 41 ¶ 1), Wylie appears to be arguing that his behavior constituted excusable neglect based on inadvertence. Thus, the Court will apply the three sub-factors referenced *supra*. First, a clerical error that results in the failure to file a rule-mandated concise statement of material facts that leads to potentially dispositive automatic admissions that go to the heart of a case certainly may reflect professional incompetence.[5] Second, the "clerical error" excuse is wholly incapable of verification by the Court. Third, a clerical error of this magnitude, especially given the total lack of participation throughout discovery, demonstrates a lack of diligence.[6] Therefore, all three of these sub-factors and the entire third prong of the *Pioneer* test strongly favor a denial of Wylie's Motion to File Late Statement. A single sentence referring to a nonspecific "clerical error," without more, does not excuse failure

---

[5] The Pennsylvania Rules of Professional Conduct provide that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Pa. R.P.C. 1.1. "Ignorance of the rules of procedure" constitutes professional incompetence. *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988).

[6] The Court is reluctant to penalize Mr. Wylie for his counsel's apparent lack of diligence. *See Nesselrotte*, 2009 WL 230703, at \*10. However, "a client cannot always avoid the consequences of the acts or omissions of its counsel." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (citing *Link v. Wabash Railroad*, 370 U.S. 626, 633 (1962)).

to file a required statement of material fact, failure to move for an extension of time for 26 days, and the prejudice the opposing party would suffer by granting the Motion to File Late Statement

### 4. Whether the Movant Acted in Good Faith

Under the fourth and final prong, Trans Union asserts that Wylie has offered no explanation for his motives other than that "he 'believes' his delay is excusable." (ECF No. 42 ¶ 16.) Furthermore, Trans Union suggests that "it is suspicious" that Wylie did not file its Motion to File Late Statement until after Trans Union filed its Reply, which noted the absence of Wylie's Material Statement, and Trans Union notified Wylie of the missing responsive Material Statement.

The Court lacks adequate information to make a firm conclusion as to Wylie's good faith in this matter. Wylie's refusal to participate in discovery may evince some level of bad faith, but the information presented to the Court suggests that Wylie's inaction was motivated by a misguided notion of the existence of a "holding pattern" rather than bad faith. Additionally, the Court does not agree with Trans Union that "it is suspicious" that Wylie did not file his Motion to File Late Statement until after Trans Union filed its Reply and notified Wylie of its missing statement. After these "reminders" from Trans Union, Wylie filed its Motion to File Late Statement. Rather than evincing "bad faith," this chain of events supports a conclusion that Wylie was either unaware of the requirements of the Local Rules or made some other mistake—such as a "clerical error"—that resulted in missing the deadline. This failure to act before receiving Trans Union's "reminders" suggests that Wylie made a serious mistake or failed to read and adhere to the Local Rules—not that Wylie acted in bad faith. Thus, while it is

of little consequence given the great weight of the Court's determinations on the prior three factors, this final factor does not weigh significantly in favor of either party's position.

### 5. The *Pioneer* Factors Weigh in Favor of Denial of the Motion to File Late Statement

In sum, the first two prongs of the *Pioneer* test weigh slightly in favor of denying Wylie's Motion to File Late Statement because Trans Union would suffer some prejudice from additional expense and some delay would occur. The fourth prong is largely neutral, weighing very little in favor of either party because nothing before the Court meaningfully suggests that Wylie acted in bad faith. Most importantly, the third factor strongly weighs in favor of denying the Motion to File Late Statement because an unexplained "clerical error" is a thoroughly unsatisfactory reason for failure to adhere to a Local Rule of this Court, especially given the 26-day delay in seeking to remedy this non-response and the opposing party's reasonable reliance on the admission resulting from this non-response. The *Pioneer* factors clearly weigh in favor of denying Wylie's Motion to File Late Statement, and, accordingly, the Court denies the Motion.

## IV. Conclusion

The Court denies Wylie's Rule 36(b) Motion (ECF No. 29) because of the significant prejudice that Trans Union would suffer if the Motion were granted. Furthermore, the Court denies Wylie's Motion to File Late Statement (ECF No. 41) because the *Pioneer* factors strongly weigh in favor of denial.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DAVID C. WYLIE, | ) | Case No. 3:16-cv-102 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| TRANSUNION, LLC, | ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 29th day of September 2017, upon consideration of Defendant's Motions (ECF Nos. 29, 41) and for the reasons set forth in the Court's accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Wylie's Rule 36(b) Motion to Withdraw or Amend Responses to Defendant's Request for Admissions (ECF No. 29) and Wylie's Motion for Leave to File Out of Time Statement of Material Facts in Support of his Response to Trans Union's Motion for Summary Judgment (ECF No. 41) are **DENIED**.

BY THE COURT:

/s/ Kim R. Gibson
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**